*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 16, 2014                517392
_____

ST. LAWRENCE FACTORY STORES,
                    Appellant,

        v
                                        MEMORANDUM AND ORDER

OGDENSBURG BRIDGE AND PORT
    AUTHORITY,
                    Respondent.
_____


Calendar Date:  September 10, 2014

Before:  Lahtinen, J.P., McCarthy, Rose, Lynch and Devine, JJ.


                    _____


        David C. Buran, Colchester, Vermont, for appellant.

        Harter Secrest & Emery, LLP, Rochester (A. Paul Britton of counsel), for respondent.


                    _____


Lynch, J.

        Appeals (1) from that part of an order of the Supreme Court (Rogers, J.), entered March 29, 2013 in St. Lawrence County, upon a decision of the court in favor of defendant, and (2) from the judgment entered thereon.

        The history of this breach of contract action, which was commenced in 1992, is chronicled in three prior decisions of this Court (49 AD3d 1069 [2008]; 26 AD3d 700 [2006]; 202 AD2d 844 [1994]).  The underlying dispute arises out of a 1990 sale option contract giving plaintiff, a general partnership, the option to purchase an undeveloped tract of land in the City of Ogdensburg, St. Lawrence County for purposes of constructing a retail factory outlet.  As relevant here, following a bench trial in 2006, Supreme Court found that defendant breached the contract in bad

faith by failing to complete the closing on January 17, 1992, but that plaintiff failed to prove damages. After this Court affirmed (49 AD3d 1069 [2008], supra), the Court of Appeals determined that the dismissal before trial of plaintiff's claim for reliance damages was in error (13 NY3d 204 [2008]). That Court reinstated plaintiff's claim for reliance damages, defined as "damages based on [its] reliance interest, including expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed" (id. at 208 [internal quotation marks and citation omitted]). Correspondingly, "it is equally fundamental that the injured party should not recover more from the breach than [it] would have gained had the contract been fully performed" (Freund v Washington Sq. Press, 34 NY2d 379, 382 [1974]). After a trial on remittal limited to the issue of reliance damages, Supreme Court found that defendant proved with reasonable certainty that plaintiff would not have been able to recover its performance expenses had the contract been performed, since the proposed construction of a factory outlet at the site was not feasible. As a result, the court limited the damages award to the recovery of the option payment and expenses for a survey and soil testing. Plaintiff appeals.

Essentially, plaintiff maintains that Supreme Court's decision is against the weight of the trial evidence, contending that defendant failed to meet its burden of demonstrating that plaintiff would not be able to recover its expenses had it closed on the property. "Upon review of a nonjury trial verdict, this Court independently review[s] the probative weight of the evidence, together with the reasonable inferences that may be drawn therefrom, and grant[s] the judgment warranted by the record while according due deference to the trial court's factual findings and credibility determinations" (Fitzpatrick v Animal Care Hosp., PLLC, 104 AD3d 1078, 1079-1080 [2013] [internal quotation marks and citations omitted]). As noted by Supreme Court, reliance damages are recoverable "provided they are proximate in effect, and are not speculative or uncertain in character and were fairly within the contemplation of the parties when the [contract] was made, or might have been foreseen as a consequence of a breach of its covenants" (Friedland v Myers, 139

NY 432, 436 [1893]; see Restatement [Second] of Contracts § 349; 13 NY3d at 208).

A key feature of the underlying option to purchase was that plaintiff was required to build a retail factory outlet on the property, which could not be developed for any other purpose.  To that end, plaintiff presented testimony showing substantial efforts were undertaken throughout 1990 and 1991 to secure prospective tenants and financing for the actual construction of the project.  Plaintiff asserted performance expenses totaling $576,176 based, in part, on various expenses incurred by both the partnership and Frank Arvay, its managing partner, in efforts to secure tenants and financing, and in designing and marketing the project.  Notably, the expense total also includes a "developer's fee" of $140,625 and "partners leasing fees" of $90,150.

By the closing date, however, plaintiff had yet to secure financing.  Although plaintiff had secured a number of lease commitments, in December 1991, an anchor tenant sent a cancellation notice of its lease.  As a result, 17 leases remained, representing approximately 56% of the gross leaseable space, but six of these were terminable at will.  There were also six letters of intent to lease.  Negotiations were still ongoing to secure financing through First Toronto Group, the only remaining prospective lender, but Arvay was uncertain as to whether he informed that lender that an anchor tenant had cancelled.

In this context, Supreme Court credited the testimony of David Schwaner, defendant's expert witness, that the project was not feasible as of January 1992.  Schwaner, a commercial real estate appraiser, testified that it was difficult to obtain financing for real estate development projects in the early 1990s.  Schwaner also disputed the assertion of Emmanuel Halper, plaintiff's expert, that financing became easier to obtain in 1992.  After performing an analysis of shopping center sales in St. Lawrence County from 1992 through 2010, Schwaner opined that retail properties had been significantly overbuilt in St. Lawrence County.  Based on the size of the project and the changing currency exchange rates with Canada, Schwaner testified that the project was too small to attract Canadian customers — a

significant contention given that plaintiff marketed the project as reliant on a Canadian customer base. While we previously determined that Arvay was entitled to pursue this project on behalf of the partnership (202 AD2d at 845), his partner's refusal to participate certainly compromised their prospects. To illustrate, Key Bank offered financing conditioned on personal guarantees by the partners – a condition that could not be met because, as Arvay conceded, his partner would not have signed the guarantee. As Supreme Court emphasized, plaintiff had been rejected by over 30 lenders, and had contacted up to 90 lenders without success. Moreover, the court found no credible evidence that tenants who had signed letters of intent remained interested in the project. Although Halper painted a much brighter picture for the project, Supreme Court found his testimony less compelling, noting that he did not factor in the demand for retail shopping facilities in St. Lawrence County or the demographics of the area. Given the dispute between experts, we defer to Supreme Court's assessment of their credibility.

On this record, we find ample support for Supreme Court's determination that the project was not feasible. We are not persuaded by plaintiff's thesis that the project could have succeeded at some future point or that the partnership could have recouped its expenses by selling the project to another developer. That plaintiff was able to sell a different, undeveloped project to a new developer does not mean that the same opportunity would have arisen here, and to assert as much is simply speculative. Moreover, we do not agree with plaintiff's assertion that defendant was required to demonstrate that plaintiff could never recover its losses. The standard here is one of "reasonable certainty" based on circumstances presented at the time of the breach, and a reasoned assessment of the project's potential. Consistent with Schwaner's testimony, Arvay conceded that a drought in financing continued through 1994, and that by 1998 it was no longer feasible to attract Canadian customers for the project. All told, Supreme Court reasonably concluded that the factory outlet center would not have been built and that plaintiff would have been unable to recoup its preparation expenses even if it had purchased the property from defendant at the January 1992 closing.

We do find that an adjustment in the interest award is required.  Supreme Court duly awarded interest pursuant to CPLR 5001 on each damage item from the "earliest ascertainable date the cause of action existed," i.e., January 17, 1992.  Plaintiff maintains that he was also entitled to an award of interest pursuant to CPLR 5002 from the court's November 2006 judgment finding that defendant had breached the parties' contract, as in a bifurcated trial (see Love v State of New York, 78 NY2d 540, 544 [1991]).  We agree.  The dispositive point from Love is that plaintiff's right to be compensated for damages became fixed upon the court's breach of contract determination (see id.).  That there has been an extensive delay in defining and computing the amount of plaintiff's reliance damages "is of no moment" (id.).  As such, we conclude that plaintiff is also entitled to prejudgment interest under CPLR 5002 calculated from the date of the breach of contract determination.

Lahtinen, J.P., McCarthy, Rose and Devine, JJ., concur.

ORDERED that the order and judgment are modified, on the law, without costs, by awarding prejudgment interest pursuant to CPLR 5002; matter remitted to the Supreme Court for a recalculation of interest; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court